345-20/PJG/YA

**FREEHILL HOGAN & MAHAR LLP**
*Attorneys for Plaintiffs*
80 Pine Street, 25th Floor
New York, New York 10005-1759
(T): 212.425.1900 | (F): 212.425.1901
Peter J. Gutowski
Yaakov U. Adler

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAUREL SHIPPING LLC, FREEPOINT COMMODITIES LLC, and FREEPOINT COMMODITIES SINGAPORE PTE LTD.,<br><br>Plaintiffs,<br><br>-against-<br><br>RIDGEBURY KILO LLC,<br><br>Defendant. | **IN ADMIRALTY**<br><br>**Civil Action No.: 20-cv-7246** |

## VERIFIED COMPLAINT

Plaintiffs, LAUREL SHIPPING LLC ("Laurel"), FREEPOINT COMMODITIES LLC ("Freepoint"), and FREEPOINT COMMODITIES SINGAPORE PTE LTD ("Freepoint Singapore" and collectively with Laurel and Freepoint, as their interests may appear, "Plaintiffs"), by and through their attorneys, Freehill Hogan & Mahar LLP, as and for their Verified Complaint against the Defendant, RIDGEBURY KILO, LLC ("Ridgebury Kilo" or "Defendant"), allege, upon information and belief, as follows:

## JURISDICTION AND VENUE

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333 in that it involves claims for breach of a maritime contract and/or maritime tort claims.

531634.1

2.      Defendant cannot be found within this District within the meaning of Supplemental Admiralty Rule B.

3.      Venue is proper in this District because Defendant's property is, or soon will be, in the possession, custody, or control of Garnishees within this District.

## THE PARTIES

4.      At all times relevant to this matter, Laurel was a limited liability company organized and existing under the laws of the State of Delaware with an address in care of the Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

5.      At all times relevant to this matter, Freepoint was a limited liability company organized and existing under the laws of the State of Delaware with an address in care of the Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

6.      At all times relevant to this matter, Freepoint Singapore was a foreign business entity organized and existing under the laws of Singapore with an office and place of business located at 8 Marina View #35-05, Asia Square Tower 1, Singapore 018960.

7.      At all times relevant to this matter, Ridgebury Kilo was and is, upon information and belief, a Special Purpose Vehicle ("SPV") formed as a foreign limited liability company and organized and existing under foreign law, with an address at the Trust Company Complex, Ajeltake Island, Ajeltake Road, Majuro, Marshall Islands MH 96960.

8.      At the time of the voyage which is the subject matter of this action, Ridgebury Kilo was the owner of the "RIDGEBURY PROGRESS" (IMO No. 9180152), which was sold by Ridgebury Kilo shortly after the completion of the subject voyage and is now named the "STRIBOG" (the "Vessel").

2

531634.1

## FACTUAL BACKGROUND

9.      Plaintiffs entered into an agreement with Ridgebury Kilo for the transportation of a quantity of fuel oil from the Caribbean/ Bahamas to Singapore and/or Malaysia.

10.      The agreement was reflected in bills of lading issued at the Bahamas, on behalf of the Master/Ridgebury Kilo, on or about January 16, 2020, naming Freepoint as the shipper and for delivery to the order of Freepoint Singapore as consignee, which bills of lading incorporated by reference a certain November 20, 2019 charter party (the "Charter") between Plaintiff Laurel and Seawolf Tankers Inc. ("Seawolf") (hereinafter collectively the "Contract").[1]

11.      Ridgebury Kilo bore an obligation under the Contract and otherwise, before and throughout the voyage, to make and maintain the Vessel in a seaworthy condition and fit to carry the intended cargo.

12.      Ridgebury Kilo failed to meet these obligations.

13.      In late December 2019 and January 2020, the Vessel loaded cargo at St. Croix and Freeport, sailed the Bahamas on January 17, and discharge orders were thereafter given for delivery of the cargo at Malaysia/Singapore, Tanjung Pelepas STS.

14.      The Vessel should have arrived approximately 41 days later, but while in transit, it was plagued by multiple mechanical failures resulting in serial stoppages and attendant delays which caused her to arrive at her destination, approximately 57 days late, on April 24.

15.      Problems began almost immediately following the commencement of the voyage. On January 28, 2020, the scavenging air space of the main engine on cylinders nos. 1 and 7 was reportedly overheating, requiring the Vessel to stop for main engine for repairs.

16.      On January 30, the Vessel again stopped again for engine work.

---

[1] A related litigation is currently pending in the Southern District of New York between Seawolf and Laurel under Civil Action Number 20-cv-5198 (RA), and Plaintiffs will be moving to consolidate this matter with that action.

531634.1

17.     The Vessel had to be stopped again on February 3 due to still existing high scavenging temperatures on cylinder no. 6. The voyage did not resume until February 4.

18.     High scavenging temperatures on cylinder nos. 1 and 3 forced the Vessel to stop again on February 7, and the voyage did not resume until February 8.

19.     Shortly thereafter on February 10, the Vessel deviated to St Helena to receive spares for further main engine repairs and to undergo necessary repairs by service engineers to the no. 2 turbocharger, which had been damaged. The Vessel remained at St Helena until February 20.

20.     Four days later, the Vessel had to stop again from February 24 to February 25 due to high temperature of the scavenging air on cylinder no. 3, followed by a further stop on February 26 in relation to the same problem on cylinder no. 1.

21.     The Vessel thereafter experienced another prolonged stoppage, this time for 19 days off Cape Town, South Africa, where it obtained more spare parts and underwent additional repairs to the main engine from February 29 through March 18, during which time the cylinders had to be recalibrated, liners replaced, and repairs also had to be carried out to the Alpha lubricator system.

22.     On March 23, the Vessel stopped again off Durban, South Africa, due to the continuing issue of high temperature of scavenging air on cylinder nos. 4 and 7.

23.     On March 29, the Vessel stopped off Madagascar for further repairs.

24.     Thereafter, the Vessel proceeded to Port Louis, Mauritius to receive bunkers (fuel) and additional spare parts and to carry out additional repairs to the main engine between March 31 and April 7.

25.     The Vessel finally arrived at Tanjung Pelepas on April 24, 2020.

26.     The multiple engine problems, stoppages and delays, roughly doubling the length of the voyage, were caused by the unseaworthiness of the Vessel at the commencement of and throughout the subject voyage, giving rise to contractual and/or tort-based liability on the part of Defendant to Plaintiffs.

27.     As a consequence, Plaintiffs, combined, have or will suffer damages in the amount of $29 Million, as nearly as can now be computed, based on the difference between the value of the cargo when it should have arrived and the value of the cargo when it eventually arrived, unpaid freight, plus other costs and expenses incurred in mitigating Defendant's breaches, etc.

## REQUEST FOR MARITIME ATTACHMENT
## AND GARNISHMENT UNDER RULE B

28.     After investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but Defendant is believed to have, or will have during the pendency of this action, property within this jurisdiction in the form of proceeds from the sale of the Vessel which are likely to be held by garnishees RV4 Fleet Finance LLC, Ridgebury V4 Investments LLC, and/or DnB Bank ASA. The basis of Plaintiffs' belief is the allegations set forth within, and supporting documents annexed to, a Verified Complaint filed by Seawolf in this District, which enabled Seawolf to obtain an attachment of Ridgebury Kilo's assets in this jurisdiction. *Seawolf Tankers Inc. et al. v. Ridgebury Kilo LLC*, 20-cv-06434-RA, Dkt. No. 10, (S.D.N.Y. Aug. 18, 2020).

29.     Based upon the foregoing, the total amount Plaintiffs seek to attach in this action, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, is $29 Million consisting of the combined damages and losses, together with interest, legal fees and costs.

531634.1

WHEREFORE, Plaintiffs pray:

a.    That process in due form of law according to the practice of this Court may issue against Defendant, citing it to appear and answer the foregoing, failing which default may be taken;

b.    That because Defendant cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of $29 million belonging to, due, or being transferred to, from, or for the benefit of the Defendant, including, but not limited to, such property as may be held, received or transferred in Defendant's name, or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of garnishee RV4 Fleet Finance LLC and/or garnishee Ridgebury V4 Investments LLC and/or garnishee DnB Bank ASA, and other banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Rule B answer the matters alleged in the Verified Complaint;

c.    That because it appears that the U.S. Marshal's Service lacks sufficient staff to effect service of Process of Maritime Attachment and Garnishment promptly or economically, and that since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies in time and expense, such a person be appointed pursuant to FED. R. CIV. P. 4(c) to serve Process of Maritime Attachment and Garnishment in this action;

d.    That this Court retain jurisdiction over the matter through the entry of judgment of the pending claims including any appeals thereof, and for any further or supplemental proceedings as may be necessary;

e.    That this Court award Plaintiffs their reasonable attorneys' fees and costs incurred in this action; and

f.    For such other, further and different relief as this Court may deem just and proper, including but not limited to a default with respect to any property seized in the event a timely response is not filed, and consolidation with the pending action 20-cv-5198 (RA) between Seawolf and Laurel and the related action 20-cv-06434 (RA) between Seawolf and Ridgebury Kilo.

Dated: New York, New York
       September 4, 2020

                              FREEHILL HOGAN & MAHAR LLP
                              *Attorneys for Plaintiffs*

                        By:  /s/Peter J. Gutowski
                              Peter J. Gutowski
                              Yaakov U. Adler
                              80 Pine Street, 25th Floor
                              New York, New York 10005-1759
                              (T): 212.425.1900 | (F): 212.425.1901
                              gutowski@freehill.com
                              adler@freehill.com

7