UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/17/2021

LAUREL SHIPPING LLC, FREEPOINT
COMMODITIES LLC, and FREEPOINT
COMMODITIES SINGAPORE PTE LTD.,

Plaintiffs,

v.

RIDGEBURY KILO LLC and SEAWOLF
TANKERS INC.,

Defendants.

No. 20-CV-7246 (RA)

MEMORANDUM
OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiffs Laurel Shipping LLC, Freepoint Commodities LLC, and Freepoint Commodities Singapore Pte Ltd. (collectively "Plaintiffs") bring this action in admiralty against Defendants Ridgebury Kilo LLC and Seawolf Tankers Inc. asserting claims for breach of contract and maritime tort. The underlying dispute, which concerns the chartering of a maritime vessel carrying fuel oil from the Caribbean to South East Asia, is also the subject of a related action pending before this Court. *See* No. 20-cv-5198. Now before the Court is the motion brought by Defendant Seawolf Tankers Inc. to dismiss the action. For the reasons stated below, the motion is granted.

**BACKGROUND**

**I.     Factual Background**

The Court draws the following facts from the Second Amended Complaint, Dkt. 40 ("Complaint"). For the purposes of this motion, the Court accepts all of Plaintiffs' well-pled factual allegations as true. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam). All citations to the docket relate to the docket in case number 20-cv-7246, unless otherwise noted.

Plaintiffs Laurel Shipping LLC ("Laurel") and Freepoint Commodities LLC ("Freepoint") are both limited liability companies headquartered in Delaware. Compl. ¶¶ 3-4. Plaintiff Freepoint Singapore Pte Ltd. ("Freepoint Singapore") is a "foreign business entity organized and existing under the laws of Singapore." *Id.* ¶ 5. Defendant Seawolf Tankers Inc. ("Seawolf") is a "foreign business entity organized and existing under the laws of the Marshall Islands." *Id.* ¶ 8. Defendant Ridgebury Kilo LLC ("Ridgebury") is, upon information and belief, a "Special Purpose Vehicle" that is also based in the Marshall Islands. *Id.* ¶ 6.

The dispute in this action concerns a vessel called the RIDGEBURY PROGRESS (the "Vessel"), which, at all relevant times, was owned by Ridgebury and time-chartered to Seawolf pursuant to a July 31, 2015 agreement between the two parties. *Id.* ¶¶ 7, 9. Seawolf then "sub-chartered the Vessel to Laurel pursuant to a charter party dated November 20, 2019" (the "Charter"). *Id.* ¶ 9.

The Complaint asserts that "Plaintiffs entered into agreements with Defendants as carriers, disponent owners and owners for the transportation of a quantity of fuel oil" from the Bahamas to Singapore and/or Malaysia. *Id.* ¶ 10. According to Plaintiffs, their "agreement with Seawolf is reflected in the Charter and bills of lading," while their agreement with Ridgebury is "reflected in

2

bills of lading (which incorporate the Charter) issued at the Bahamas, on behalf of the Master/Ridgebury Kilo, on or about January 16, 2020, naming Freepoint as the shipper and indicating delivery to the order of Freepoint Singapore as consignee." *Id.* ¶ 11. Pursuant to these agreements, Plaintiffs allege, Defendants "bore an obligation . . . to make and maintain the Vessel in a seaworthy condition and fit to carry the intended cargo." *Id.* ¶ 12.

After departing the Bahamas on or around January 17, 2020, loaded with cargo, the "Vessel should have arrived approximately 41 days later." *Id.* ¶ 15. While in transit, however, the Vessel was "plagued by multiple mechanical failures resulting in serial stoppages and attendant delays which caused her to arrive at her destination" on April 24, 2020, approximately 57 days late. *Id.* The Complaint describes these failures and stoppages in detail. *See id.* ¶¶ 17-25.

## II.   Procedural History

This Court's involvement in this dispute began on July 7, 2020 when Seawolf filed suit against Laurel seeking payment totaling $12,854,357.39, for alleged unpaid freight and port costs due under the Charter. *See* No. 20-cv-5198, Dkt. 1. Laurel answered that complaint on September 1, 2020, asserting a counterclaim against Seawolf for breach of the Charter's warranty of seaworthiness. *See* No. 20-cv-5198, Dkt. 22. Seawolf answered the counterclaim on October 2, 2020. No. 20-cv-5198, Dkt. 28.

On September 4, 2020—three days after Laurel filed its counterclaim in the initial action—Plaintiffs initiated this action against Ridgebury, seeking a maritime attachment and garnishment under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. Dkt. 1. Plaintiffs filed an amended complaint on September 15, asserting substantially the same claims. Dkt. 19. On October 23, 2020, Plaintiffs filed the operative Complaint, now asserting clams for "breach of contract and/or maritime tort" and adding Seawolf as a defendant. Dkt. 40. That same day, having

received the parties' consent, and finding that the actions involved common questions of law and fact, the Court consolidated both actions under the docket number of the lead case, 20-cv-5198. Dkt. 44.

Seawolf filed the instant motion to dismiss on December 4, 2020. Dkt. 50 ("Mot.").

### III.     Allegations in the Complaint

Plaintiffs bring causes of action against both Defendants for "breach of contract and/or maritime tort." Compl. at 5. According to Plaintiffs, the "multiple engine problems, stoppages and delays, roughly doubling the length of the voyage, were caused by the unseaworthiness of the Vessel," thus giving rise to "contractual and/or tort-based liability on the part of Defendants to Plaintiffs." *Id.* ¶ 27. Plaintiffs assert that Defendants are "liable as carriers under the bills of lading and Charter," that Seawolf is liable to "Laurel under the Charter" and to Freepoint and Freepoint Singapore as "third-party beneficiaries and/or under principals of agency or agent for a disclosed and/or undisclosed principal." *Id.* They further assert that Plaintiffs "have or will suffer damages in the amount of $29 million … based on the difference between the value of the cargo when it should have arrived and the value of the cargo when it eventually arrived, the freight, and other loading and transportation costs, plus other costs and expenses incurred in mitigating Defendants' breaches etc." *Id.* ¶ 28.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make that determination, the Court must "accept[] all factual allegations as true … but [is] not required to credit conclusory allegations or legal

conclusions couched as factual … allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020) (internal quotation marks omitted). "Accordingly, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (internal quotation marks omitted).

## DISCUSSION

As an initial matter, Plaintiffs clarify in their opposition to the instant motion that they do not intend to pursue any tort-based claims against Laurel and that "Freepoint is withdrawing any claims as a Plaintiff in these proceedings." *See* Dkt. 57 ("Opp.") at 7 n.3, 11 n.5, 12 n.6. Accordingly, the Court interprets the Complaint as asserting three causes of action against Seawolf: 1) a breach-of-contract claim brought by Laurel; 2) a breach-of-contract claim brought by Freepoint Singapore; and 3) a tort claim brought by Freepoint Singapore. The Court addresses each in turn.

### I.  Breach-of-Contract Claim Brought by Laurel

Seawolf argues that dismissal of Laurel's breach-of-contract claim is justified on two separate grounds: 1) that it is duplicative of the counterclaim filed in the related action before this Court; and 2) because Laurel lacks standing to assert a claim for loss of value to the cargo, as it has not plausibly alleged that it owned the cargo on the Vessel. With respect to the first argument, Plaintiffs insist that dismissal pursuant to the "first-filed rule" is not necessary in this case because both actions are proceeding before this Court. As to the second, Plaintiffs maintain that they have stated a facially plausible claim for a breach of the Charter.

The Court agrees that Laurel's claim here is duplicative of its counterclaim in the related action. Plaintiffs do not dispute that fact in their opposition or attempt to draw any distinction between the two claims. Nor could they. First, the parties are the same. Second, the substance of the two claims is identical—although the Complaint here alleges more facts about the various issues that

plagued the Vessel during its fateful voyage—as both allege that the mechanical failures and resulting delays constituted a breach of the warranty of seaworthiness contained in the Charter.  *See* 20-cv-5198, Dkt. 21 ("Counterclaim") ¶¶ 26-28.  Lastly, both claims assert damages on the same bases, for the diminution of value of the cargo and other expenses incurred in mitigating Seawolf's breaches.  *Compare* Counterclaim ¶ 30 *with* Compl. ¶ 28.  In other words, Laurel seeks the same remedy for the same legal violation based on the same facts.  The Court can discern no material difference between the claim asserted here and the earlier-filed counterclaim.

"'As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.'"  *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (quoting *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir. 2000)).  "This is because a plaintiff has no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."  *Id.*  In determining whether a discretionary stay or dismissal is appropriate, the Court must "consider the equities of the situation."  *Curtis,* 226 F.3d at 138.  "[T]hough no precise rule has evolved, the general principle is to avoid duplicative litigation."  *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976).  Because the claims asserted by Laurel here are duplicative of those it is asserting before this Court in a counterclaim in a related case, the Court finds that dismissal is appropriate.  *See Sacerdote*, 939 F.3d at 504 (noting that for the rule against duplicative litigation to be properly invoked "[t]here must be the same parties…; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same." (internal quotation marks omitted)).  Moreover, Laurel will suffer no discernable prejudice by pursuing this action as a counterclaim, which Seawolf answered in lieu of moving to dismiss.  *See* No. 20-cv-5198, Dkt. 28.

**II.     Breach-of-Contract Claim Brought by Freepoint Singapore**

As Freepoint Singapore was not party to the Charter or any other agreement with Seawolf, its claim for breach of contract relies on a third-party-beneficiary theory. *See* Compl. ¶ 27. Seawolf argues that the Complaint does not allege sufficient factual content to support a plausible claim for liability as a third-party beneficiary. Mot. at 9. The Court agrees, but will grant Freepoint Singapore leave to amend its Complaint.

In this admiralty action, "the general maritime law, as developed by the judiciary, applies." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986). "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *Id.* at 864-65. Under this framework, "[c]harter parties and bills of lading are interpreted using the ordinary principles of maritime contract law," *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 823 (2d Cir. 2006), to which common law third-party beneficiary principles are generally applicable, *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 72 (S.D.N.Y. 2012)*, aff'd sub nom. Chem One, Ltd. v. M/V RICKMERS GENOA*, 502 F. App'x 66 (2d Cir. 2012).

Those principles are well-established. "A party asserting rights as a third-party beneficiary must establish," as relevant here, "that the contract was intended for [its] benefit and … that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006). The Complaint does not make that showing because it contains next to no factual allegations about any of the agreements that Seawolf executed. Instead, Plaintiffs broadly assert that "Plaintiffs' agreement with Seawolf is reflected in the Charter and the bills of ladings," and that "Defendants bore an obligation to Plaintiffs under the Charter [and] bills of

lading." Compl. ¶¶ 11, 12.  Plaintiffs did not attach the Charter or any bills of lading to the Complaint, although they have appended copies to a Declaration in Opposition to the Motion to Dismiss.  *See* Dkt. 58-1 ("Charter"), 58-2 ("Bills of Lading").   Yet Plaintiffs further no argument that any intent to benefit Freepoint Singapore can be gleaned from the face of the Charter, nor can the Court discern such an intent from the mere fact that the Charter mentions "bills of lading."  Similarly, the Bills of Lading—agreements between Freepoint, Freepoint Singapore, and the master of the Vessel—do not appear to bind Seawolf in any way.

In light of the threadbare nature of the allegations about the underlying agreements, the Court is not persuaded that Plaintiffs have plausibly alleged that "the circumstances surrounding the Charter indicate that the representations Seawolf made in the Charter concerning seaworthiness and timely delivery were intended to benefit Freepoint Singapore," Opp. at 18.  Nor can the Court credit the conclusory allegation that Freepoint Singapore was a "third-party beneficiar[y]" "under the Charter," Compl. ¶ 27.  In sum, even if Freepoint Singapore could be a third-party beneficiary of the Charter, it has failed to plead facts sufficient to demonstrate such status.  That claim is accordingly dismissed.

### III.  Tort Claims Brought by Freepoint Singapore

Lastly, Seawolf moves to dismiss the tort claims brought by Freepoint Singapore, principally arguing that tort damages for a maritime plaintiff are barred by the "economic loss rule," as outlined by the Supreme Court in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986).  Plaintiffs respond that the economic-loss rule applies only in the product-liability context and is therefore inapposite to this action.  They insist that Freepoint Singapore pled facially plausible claims under "multiple maritime tort principles," namely negligence, conversion, tortious interference, and misrepresentation.  Opp. at 12-13.  In reply, Seawolf argues—elaborating on arguments in its initial motion—that the above-referenced tort claims were not pled in the Complaint,

and that, in any case, the Complaint does not contain sufficient factual content to support them. Because the Court agrees with the latter argument, it need not address the applicability of the economic-loss doctrine.

Defendants correctly assert that the Complaint does not specify any particular theory of tort liability. Instead, Plaintiffs broadly state that "[t]he multiple engine problems, stoppages and delays … caused by the unseaworthiness of the Vessel"—which are detailed in the Complaint—"giv[e] rise to contractual and/or tort-based liability." Compl. ¶ 27. This unspecified tort claim thus appears to rely on the same factual allegations as the breach-of-contract claim, namely the Vessel's unseaworthiness as evidenced by her mechanical problems and subsequent delays. *See* Compl. ¶¶ 14-26.

Not until their opposition to the instant motion did Plaintiffs specify the nature of their tort claims or provide factual support for those claims. First, they argue that Seawolf was negligent because it "was aware of the poor maintenance practices applied to the Vessel" and had been operating the Vessel for over five years. Opp. at 13. Second, they assert that Seawolf is liable for conversion, as evidenced by "the actions of Seawolf to conceal the extent to which the Vessel was in disrepair, augmented by the conduct and communications (or lack thereof) throughout the Voyage." *Id.* at 14. Third, they argue that Seawolf committed tortious interference by "purposefully downplay[ing] the breakdowns, transmitt[ing] reports after the fact, and misrepresent[ing] the extent of the issues by indicating that complete repairs had been effected." *Id.* at 15. Lastly, Plaintiffs maintain that these same facts support a claim for misrepresentation. *See id.* Although these claims might ultimately prove plausible, they find no factual support in the Complaint. Nowhere in the Complaint do Plaintiffs allege that Seawolf was aware of the Vessel's mechanical issues before chartering it to Laurel let alone that it concealed its knowledge.

To support their claims, Defendants rely instead on representations made by Eugene Hughes—the Director of Global Oil Operations at Freepoint—in a Declaration in Opposition to Motion to Dismiss. *See* Dkt. 58. Because none of these allegations were included in the Complaint, the Court will not now consider them. *See Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 380 (S.D.N.Y. 2012) ("[M]emoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint." (internal quotation marks omitted)); *see also Houston v. Seward & Kissel, LLP*, 07-CV-6305 (HB), 2008 WL 818745, at *9 (S.D.N.Y. Mar. 27, 2008) (rejecting plaintiff's submission of "factual averments" for the first time in its opposition brief).

In sum, the barebones allegations in the Complaint lack the requisite factual content to state a plausible claim for relief under any of the tort theories proffered by Plaintiffs in their opposition. Accordingly, the motion to dismiss the "tort-based" claim brought by Freepoint Singapore is granted.

**IV.     Leave to Amend**

Plaintiffs have requested leave to further amend the Complaint in the event that any portion of Seawolf's motion to dismiss is granted. Opp. at 19-20. Seawolf insists that Plaintiffs should not be given a third attempt to amend their Complaint. The Court disagrees. Pursuant to Fed. R. Civ. P. 15(a)(2), a court should freely grant leave to amend "when justice so requires." *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (describing the standard set forth in Rule 15 as "permissive"). "Ordinarily, a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint." *Obra Pia Ltd. v. Seagrape Inv'rs LLC*, 19-CV-7840 (RA), 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021) (citing *Loreley,* 797 F.3d at 190-191). The factual averments in Plaintiffs' opposition and the declaration thereto indicate that Freepoint Singapore has specific facts it seeks to plead in a further amended complaint and suggest that amendment may not be futile. Because Freepoint Singapore

may be able to cure the deficiencies in its Complaint by pleading additional facts, the Court will permit it to file an amended complaint if it has a good-faith basis to do so.

## CONCLUSION

For the foregoing reasons, Seawolf's motion to dismiss is granted. The Court dismisses the claims brought by Laurel Shipping LLC and Freepoint Commodities LLC against Seawolf with prejudice. The claims brought by Freepoint Commodities Singapore Pte Ltd. against Seawolf are dismissed without prejudice. If Freepoint Commodities Singapore Pte Ltd. chooses to file an amended complaint, it shall do so by no later than October 8, 2021. Failure to file an amended complaint by that date will result in dismissal of this case with prejudice.

The Clerk of Court is respectfully directed to terminate the item at docket number 50.

SO ORDERED.

Dated:    September 17, 2021
          New York, New York

_____
Ronnie Abrams
United States District Judge